# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO DE JESUS ALANIS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:13-cv-01306-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |

Plaintiff Gilberto De Jesus Alanis ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.)  All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes.  (ECF Nos. 6, 8.)

Plaintiff applied for Social Security benefits due to impairments related to obesity, a history of right lower extremity medial tibial plateau fracture, degenerative joint disease of the knees, and asthma.  For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is denied.

/ / /

/ / /

/ / /

1

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on May 5, 2010. (AR 127-134.) Plaintiff's application was denied on September 1, 2010. (AR 56.) Plaintiff requested reconsideration of the denial on October 20, 2010. (AR 62.) Plaintiff's application was denied after reconsideration on December 29, 2010. (AR 65.) On February 4, 2011, Plaintiff requested a hearing. (AR 71.)

On April 17, 2012, a hearing took place before Administrative Law Judge Timothy G. Stueve ("the ALJ"). (AR 31.) On April 25, 2012, the ALJ issued a written decision and found that Plaintiff was not disabled. (AR 10-21.) The Appeals Council denied Plaintiff's request for review on April 12, 2013. (AR 5.)

### A.  Plaintiff's Hearing Testimony

Plaintiff was born on April 10, 1981. (AR 35.) Plaintiff is married and lives in a house with his wife and children, aged eight and nine. (AR 35.) Plaintiff is 5'9" and weighs 345 pounds. (AR 35.) Plaintiff went to school until his sophomore year in high school. (AR 35.) Plaintiff can read and write in English, but reported having dyslexia and a reading disorder. (AR 35.)

Plaintiff worked as a tow truck driver for about a year in 1999-2000. (AR 36.) Plaintiff worked four to five hours a day, but not every day. (AR 36.) In 1999, Plaintiff worked as a fruit packer. (AR 36.)

In May 2011, Plaintiff was diagnosed with Type 2 diabetes. (AR 37.) Plaintiff takes two pills in the morning and one pill at night. (AR 37.) Plaintiff reported side effects including sleepless nights and problems with his weight. (AR 38.)

Plaintiff has constant pain in both knees. (AR 38.) On good days, the pain level is four out of ten, and on bad days it is ten out of ten and Plaintiff cannot get out of bed and Plaintiff uses a wheelchair to go to the bathroom. (AR 38.) Plaintiff's pain gets worse in cold weather.

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 9.)

(AR 48.)

Plaintiff takes Vicodin two times a day for pain relief and Ibuprofen to reduce swelling. (AR 39.) Plaintiff reported that the pain gets worse if he has to walk or use stairs. (AR 39.) Sitting also causes his knees to swell up. (AR 39.) Plaintiff has difficulty losing weight because he cannot do cardio exercises. (AR 39.) Plaintiff was going to receive surgery for his knees but the anesthesiologist told Plaintiff there was an issue with his lungs that made surgery too dangerous. (AR 40.)

Plaintiff uses a cane, a walker, a wheelchair and a shower chair. (AR 40.) Plaintiff switches between the cane, walker, and wheelchair depending on the pain level. (AR 40-41.) Plaintiff takes Advair for asthma. (AR 41.) Plaintiff also has a nebulizer at home, which he uses more often in the winter but not on a daily basis. (AR 41.)

In July 2010, a doctor indicated that Plaintiff did not need to use a cane. (AR 42.) Plaintiff explained that he does not see that doctor in person very often, so he would not know about Plaintiff's problems. (AR 42.)

On a normal day, Plaintiff lies in bed, tries to pick up his kids from school, and get groceries as needed. (AR 42.) Plaintiff's wife does the chores at home. (AR 42.) Plaintiff watches TV and reads, but forgets what he reads after he is done reading. (AR 43.)

Plaintiff sleeps around 10:00 p.m. and gets out of bed around 1:30 p.m. (AR 43.) However, after doing errands, Plaintiff generally goes back to lie down in bed by 5:00 p.m. (AR 43-44.) Plaintiff elevates his legs while in bed for about seven hours a day. (AR 44.)

Plaintiff reported that he can sit for 15-20 minutes at a time, stand for 10-15 minutes, and walk the length of two football fields. (AR 45.) Plaintiff can lift 15-20 pounds while sitting, and is not supposed to lift anything while standing. (AR 45.) Plaintiff has trouble walking on uneven surfaces. (AR 45.) Plaintiff can go up a flight of stairs, but very slowly. (AR 45.)

Plaintiff reported difficulty concentrating. (AR 46.) Plaintiff can read for about 20 minutes at a time. (AR 46.) Plaintiff must be dressed by his wife because he has problems bending his knees. (AR 47.) Plaintiff's wife also helps clean the lower portions of his body. (AR 47.)

1  Dr. Gill told Plaintiff in 2002 or 2003 that Plaintiff could walk for 10-20 years before he
2  would be committed to a wheelchair because of his joints.  (AR 47.)

**B.    VE Testimony**

Thomas Dachelet testified as a vocational expert (hereinafter referred to as "the VE") at the April 17, 2012 hearing before the ALJ.  (AR 48.)  The ALJ provided the VE with the following first set of hypothetical limitations:

- Can lift 20 pounds occasionally, 10 pounds frequently;
- Can stand or walk for up to six hours;
- Can sit for up to six hours;
- Can occasionally climb ramps or stairs;
- Can never climb ladders, ropes, or scaffolds;
- Can frequently balance; and
- Can occasionally stoop, kneel, crouch, and crawl.

(AR 49.)  The VE testified that a person with such hypothetical limitations could perform work as a packing line worker, a garment sorter, or an ampoule filler.  (AR 49.)

The ALJ provided the VE with the following second set of hypothetical limitations:

- Can lift 20 pounds occasionally, 10 pounds frequently;
- Can stand or walk for up to two hours;
- Can sit for up to six hours;
- Can occasionally climb ramps, stairs, ladders, ropes, or scaffolds;
- Can frequently balance, or stoop; and
- Can occasionally kneel, crouch, or crawl.

(AR 49-50.)  The VE testified that a person with such hypothetical limitations could perform work as a leaf tier[2], ampoule sealer, or weight tester.  (AR 50.)

---

[2] The administrative transcript indicates that the VE identified the job of "leaf gier" as an occupation which could be performed with the hypothetical limitations given.  However, this appears to be a typo.  The DOT code cited by the VE, 529.687-138, corresponds to the job of "Leaf Tier (tobacco)."  1 Dictionary of Occupational Titles 388 (4th Ed. 1991).  "Leaf Tier" is described in the DOT as:

The ALJ provided the VE with the following third set of hypothetical limitations:
- Can lift 20 pounds occasionally, 10 pounds frequently;
- Can stand or walk for up to two hours;
- Can sit for up to six hours;
- Can never climb ramps, stairs, ladders, ropes, or scaffolds;
- Can frequently balance;
- Can occasionally stoop;
- Can never kneel or crawl;
- Can occasionally crouch;
- Can frequently reach, handle, finger or feel bilaterally;
- Must avoid concentrated exposures to extreme cold and extreme heat; and
- Must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gasses.

(AR 50-51.) The VE testified that a person with such hypothetical limitations could perform the same work identified in response to the second hypothetical. (AR 51.)

The ALJ provided the VE with the following fourth set of hypothetical limitations:
- Same limitations as third hypothetical, plus;
- Can only occasionally handle things bilaterally.

(AR 51.) The VE testified that a person with such hypothetical limitations could not work competitively. (AR 51.)

The ALJ provided the VE with the following fifth set of hypothetical limitations:
- Same limitations as in the second hypothetical, plus;
- Needs one additional unscheduled rest break of an hour per day; and
- Would miss one to two days per month.

(AR 51-52.) The VE testified that a person with such hypothetical limitations could not work

---

Ties tobacco leaves in hands (bundles) to facilitate processing: Selects loose leaves for hand and arranges leaves with butt ends together. Winds tie leaf around butts and pulls end of tie leaf into hand.

1 Dictionary of Occupational Titles 388 (4th Ed. 1991).

competitively. (AR 52.)

**C.  Medical Records**

The administrative record includes the following medical records: a medical source statement from Dr. Stefan Pentschev, M.D. (AR 202-204), other records from Dr. Stefan Pentschev, M.D. (AR 205-249, 322-352), an August 30, 2010 physical residual functional capacity assessment from Dr. A. Lizarraras, M.D. (AR 252-256), an August 30, 2010 case assessment from Dr. A. Lizarraras, M.D. (AR 257-259), a July 27, 2009 physical capacities report (AR 260-263), a December 24, 2010 physical residual functional capacity assessment from Dr. G. Bugg, M.D. (AR 264-268), a December 29, 2010 case analysis from R. Baker (AR 269-270), and records from San Joaquin Prime Care (AR 271-321).

**D.  The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since April 26, 2010, the application date;
- Plaintiff has the following severe impairments: obesity, history of right lower extremity medial tibial plateau fracture, degenerative joint disease of the knees, and asthma;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to perform light work with the ability to lift 20 pounds occasionally, frequently lift 10 pounds, sit for up to six hours, stand or walk for approximately two hours in an eight hour day with normal breaks, never climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently balance, occasionally stoop or crouch, never kneel or crawl, frequently reach, handle, finger, and feel bilaterally, must avoid concentrated exposure to extreme cold and extreme heat, and pulmonary irritants such as fumes, odors, dusts, and gases;
- Plaintiff is unable to perform any past relevant work;

///

- Plaintiff was born on April 10, 1981 and was 29 years old, which is defined as a young individual age 18-49, on the date the application was filed;
- Plaintiff has a limited education and is able to communicate in English;
- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled;
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, since April 26, 2010, the date the application was filed.

(AR 15-21.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

The sole argument raised by Plaintiff in his appeal is whether substantial evidence supports the ALJ's finding that a significant number of jobs exist which Plaintiff can perform. Plaintiff does not challenge the ALJ's determination of Plaintiff's residual functional capacity.

At the hearing, the ALJ solicited testimony from the VE regarding the types of job Plaintiff could hypothetically perform.  Plaintiff raises no objections regarding hypotheticals presented by the ALJ.

In response to the hypothetical limitations presented by the ALJ, the VE identified three occupations which could be performed by Plaintiff: leaf tier (DOT No. 529.687-138), ampoule sealer (DOT No. 559.687-014), and weight tester (DOT No. 539.485-010). (AR 50.) The VE testified that 5,135 jobs exist in California and 47,904 jobs exist nationally as a leaf tier. (AR 50.) The VE testified that 3,028 jobs exist in California and 22,014 jobs exist nationally as an ampoule sealer. (AR 50.) The VE testified that 1,509 jobs exist in California and 13,347 jobs exist nationally as a weight tester. (AR 50.)

Plaintiff argues that the ALJ erred by failing to ask the VE to describe the methodology as to how these job numbers were determined. Plaintiff further argues that, based upon his evidence not included in the administrative record, the VE's reported job numbers are not accurate and that the actual job numbers are much lower.

The Court takes judicial notice of the record in the case of Stephanie Lynn Lang v. Commissioner of Social Security, case number 1:13-cv-00590-SAB. Attorney Steven Gilbert Rosales represents Plaintiff in this action and represented the plaintiff in Lang. In Lang, Mr. Rosales raised an identical argument to the one raised here, which the Court emphatically rejected in a written order issued on April 8, 2014. See Lang v. Commissioner of Social Sec., No. 1:13-cv-00590-SAB, 2014 WL 1383247 (E.D. Cal. Apr. 8, 2014).

With respect to Plaintiff's argument that the ALJ erred by not failing to inquire as to the VE's methodology in coming up with job numbers, the Court stated:

As an initial matter, the Court finds that the ALJ did not err in relying on the VE's testimony regarding the number of jobs existing in the national and regional economy. The Court rejects Plaintiff's attempt to fashion an argument out of ignorance. Plaintiff chose not to inquire as to the VE's methodology at the hearing and now attempts to prove that the numbers were made up due to the absence of evidence that the numbers were not made up—a void in the record that Plaintiff chose not to fill. Plaintiff cites no authority, and the Court is not aware of any authority, which requires the VE to testify as to his methodology for calculating the number of jobs available at every hearing before an ALJ. On the contrary, the Ninth Circuit has stated:

> An ALJ may take administrative notice of any reliable job information, including information provided by a VE. [Citation.] A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.

Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). While Plaintiff correctly notes that VEs are not permitted to "make up" numbers, the Court will not presume that the VE in this case "made up" job numbers simply from the absence of evidence that the VE did not "make up" the numbers. Since Plaintiff has not demonstrated that the ALJ's reliance on the VE's testimony was improper, the Court finds that the ALJ's findings pertaining to the number of jobs that exist in the economy for the jobs identified by the VE is supported by substantial evidence.

Lang, 2014 WL 1383247, at *5. For the same reasons stated in Lang, the Court rejects Plaintiff's argument that the ALJ's findings must be rejected because the ALJ did not ask the VE about the VE's methodology in calculating job numbers.

In Lang, the Court also rejected Plaintiff's argument that the ALJ erred based upon new evidence regarding job numbers that Plaintiff presented on appeal:

> As a separate matter, the Court must consider whether this case should be remanded for consideration of the new evidence presented by Plaintiff regarding the number of jobs available that Plaintiff can perform. "[I]n determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).
>
> In order to justify remand based on new evidence, Plaintiff must "demonstrate that there is a 'reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." Mayes, 276 F.3d at 462. The Court finds that Plaintiff's evidence would not have changed the outcome of the

9

> administrative hearing.
>
> ... the Court's own research using the same resources cited by Plaintiff revealed that the Bureau of Labor Statistics' job numbers are much higher than those reported by Plaintiff....
>
> It appears that Plaintiff deflated the job numbers by arbitrarily reporting the number of available jobs in a specific subset of industries. The Bureau of Labor Statistics website allows a visitor to query the employment statistics for a particular job across all industries or only in a selected subset of specified industries. In this case, it appears Plaintiff fashioned queries for only a small subset of industries, thus excluding relevant jobs in other industries.....
>
> Plaintiff's evidence is negligent at best and possibly a deliberate misrepresentation to the Court. In light of the Court's own research, the Court finds that the new evidence presented by Plaintiff would not have changed the outcome at the administrative hearing and therefore will not remand this action on this basis.

Lang, 2014 WL 1383247, at *5-6.

Plaintiff again attempts to use the same flawed methodology which the Court rejected in Lang. For example, this time, Plaintiff claims that the "leaf tier" job identified by the VE corresponds to "the aggregate SOC code of 53-7062, Laborers and Freight, Stock, and Material Movers, Hand." Plaintiff presents no admissible or persuasive evidence which demonstrates that the translation of the DOT code into an SOC code is accurate. Plaintiff simply sites a website, http://www.onetonline.org/crosswalk/, but offers no evidence or argument demonstrating the accuracy of this website or that the translation provided by the website between DOT codes and SOC codes provides a perfect one-to-one translation between the two. One can infer that the "leaf tier" job is simply a subset of the SOC category for Laborers and Freight, Stock, and Material Movers, Hand. However, Plaintiff has offered no evidence that the "leaf tier" job is equivalent to the SOC category for Laborers and Freight, Stock, and Material Movers, Hand in the tobacco manufacturing industry, of which there are only 460 national jobs according to the Bureau of Labor.

Further, Plaintiff attempts to persuade the Court that the ALJ erred based on deflated job statistics. For example, Plaintiff claims that the "weight tester" job identified by the VE corresponds to "the aggregate SOC code of 51-9061, Inspectors, Testers, Sorters, Samplers, and

Weighers." Even if this code translation is accurate, Plaintiff goes on to state that the Bureau of Labor estimates that there are only 1,850 national jobs in this category <u>within the pulp and paper industry</u>. The VE never testified that Plaintiff would be limited to performing weight tester jobs only in the pulp and paper industry. Looking beyond the pulp and paper industry, the Bureau of Labor indicates that 471,750 jobs exist in the national economy for Inspectors, Testers, Sorters, Samplers, and Weighers, which is much higher than the number of jobs reported by the VE (13,347 jobs nationally for weight testers). While one could infer that the DOT job classification for "weight tester" is some subset of the 471,750 jobs in the SOC category for Inspectors, Testers, Sorters, Samplers, and Weighers, there is no indication that the DOT "weight tester" job classification is limited to jobs in the pulp and paper industry. If anything, the Bureau of Labor sources cited by Plaintiff demonstrate the inaccuracy in translating DOT job categories into SOC job categories.

In sum, the evidence cited by Plaintiff, by itself, does not demonstrate any inaccuracy in the VE's numbers. Accordingly, the Court cannot conclude that there is a reasonable possibility that Plaintiff's new evidence would have changed the outcome of the administrative hearing. The Court finds that the ALJ did not err in relying on the job numbers provided by the VE.

Further, the Court notes that this is now the second time that Mr. Rosales has attempted to present the same argument challenging the VE's job numbers using flawed reasoning. Previously, the Court warned Mr. Rosales that deflating job numbers by arbitrarily presenting statistics to the Court based upon arbitrarily selected sub-industries was "negligent at best and possibly a deliberate misrepresentation to the Court." <u>Lang</u>, 2014 WL 1383247, at *7. This is the second time Mr. Rosales has presented the same flawed analysis to the Court, despite being expressly informed of the deficiencies in his argument. If Mr. Rosales persists in presenting misleading evidence regarding job numbers, the Court may issue sanctions. Any future attempt to present job numbers from the Bureau of Labor sources cited by Plaintiff must be accompanied by evidence demonstrating the accuracy of the DOT code to SOC code translation as well as evidence explaining why the Court should only consider job numbers from the individually selected industries cited by Plaintiff, as opposed to the reported job numbers across all industries.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is DENIED;
2. JUDGMENT is entered in favor of Defendant Commissioner of Social Security and against Plaintiff Gilberto De Jesus Alanis; and
3. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **October 1, 2014**

UNITED STATES MAGISTRATE JUDGE